# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

TERRENCE REYNOLDS,

                                        DOCKET NO.:

                    *Plaintiff,*

        -against-

                                        <u>**JURY TRIAL DEMANDED**</u>

THE CITY OF NEW YORK, GEROULD MCCOY
(*in his individual and official capacity*), HAMAN (first
name unknown) (*in his individual and official capacity*),
CHRISTOPHER MARTELL(*in his individual and official
capacity*) and MICHAEL PARENTE (*in his individual
and official capacity*),

                    *Defendants.*
-------------------------------------------------------------- X

        PLAINTIFF, **TERRENCE REYNOLDS** by and through his attorneys, THE LAW

OFFICES OF GEOFFREY T. MOTT, P.C., as and for his Complaint, against the

DEFENDANTS, **THE CITY OF NEW YORK, GEROULD MCCOY** (in his individual and

fficial capacity), **HAMAN (FIRST NAME UNKNOWN)** (in his individual and official

capacity), **CHRISTOPHER MARTELL** (in his individual and official capacity), and **MICHAEL**

**PARENTE** (in his individual and official capacity), hereinafter collectively "**DEFENDANTS**",

states and alleges as follows:

<u>**PRELIMINARY STATEMENT**</u>

        1.        This is a civil action seeking monetary relief (including past and ongoing economic

loss), declaratory judgment, compensatory and punitive damages, disbursements, costs and fees for

violations of the PLAINTIFF's rights, brought pursuant to the Fourth, Fifth and Fourteenth

Amendments of the Constitution of the United States of America, on the basis of abuse of process

and denial of PLAINTIFF'S due process and substantive process rights and failure to intervene under

42 U.S.C. § 1983, as well as State law claims including Battery pursuant to the Adult Survivors Act as PLAINTIFF was subjected to a sexual assault/harassment, physical assault, Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress, retaliation for reporting sexual abuse, assault, battery, resulting in a wrongful termination.

2.      Specifically, the PLAINTIFF alleges that the DEFENDANTS negligently, wantonly, recklessly, intentionally, and knowingly sought to and did wrongfully terminate PLAINTIFF of his employment, position, title, and pay through retaliation, misrepresentation, misinformation, harassment, and vengeance, and upon doing so wreaked substantial distress upon the PLAINTIFF.

3.      Said acts were done knowingly with the consent and condonation of THE CITY OF NEW YORK (herein "DEFENDANT NYC"), GEROULD MCCOY (herein "DEFENDANT MCCOY"), HAMAN (FIRST NAME UNKNOWN) (herein "DEFENDANT HAMAN"), CHRISTOPHER MARTELL (herein "DEFENDANT MARTELL") AND MICHAEL PARENTE (herein "DEFENDANT PARENTE") with the express purpose of removing, silencing and retaliating against PLAINTIFF, and generally violating his rights as protected by the United States and New York State Constitutions, and federal and state statutes, rules and regulations.

## JURISDICTION AND VENUE

4.      The jurisdiction of this Court is invoked under 28 U.S.C. sections 1331 and 1343. This Court is requested to exercise pendant jurisdiction with respect to PLAINTIFF's State law claims pursuant to 28 U.S.C. section 1367.

5.      Venue in the Southern District of New York is proper under 28 U.S.C. section 1391, based on the fact that PLAINTIFF's residence is in Suffolk County, New York, and DEFENDANT'S place of business is in New York County, New York.

6.      Prior hereto, on March 7, 2022, PLAINTIFF filed a Complaint against

DEFENDANT NYC with the United States District Court under case number 1:22-cv-01910-VEC, alleging First Amendment retaliation for opposing hazardous conduct. Said action is currently before the Second Circuit Court of Appeals

7.      Each of the DEFENDANTS at all times relevant to this action had the power and the duty to restrain the other DEFENDANTS and prevent them from violating the law and the rights of the PLAINTIFF, but each of the DEFENDANTS failed and refused to perform that duty, failed and refused to restrain the other DEFENDANTS, and thereby became a party to the unnecessary subjection of harm and denial of the basic rights of the PLAINTIFF.

## PARTIES

8.      PLAINTIFF, TERRENCE REYNOLDS, at all times relevant in this Complaint, was an employee of DEFENDANT NYC and is a citizen of the United States of America. PLAINTIFF resides in the County of Suffolk, State of New York.

9.      During all times relevant in this Complaint, DEFENDANT NYC, Department of Environmental Protection (herein "DEP"), Ward Island Sewage Treatment Facility (herein "WARD ISLAND"), was and is a duly constituted municipal entity, is the employer of more than six thousand (6,000) employees and employed PLAINTIFF for seventeen (17) years. DEFENDANT NYC, Ward Island Sewage Treatment Facility is located at 7 Wards Island Bridge, New York, New York 10035.

10.     During all times relevant in this Complaint, DEFENDANT MCCOY was a Supervisor, and continues to be, employed by DEFENDANT NYC, and works from the location at 7 Wards Island Bridge, New York, New York 10035.

11.     During all times relevant in this Complaint, DEFENDANT HAMAN was a Supervisor, and continues to be, employed by DEFENDANT NYC, and works from the location

at 7 Wards Island Bridge, New York, New York 10035.

12.     During all times relevant in this Complaint, DEFENDANT MARTELL was a Sewage Treatment Worker, and continues to be, employed by DEFENDANT NYC, and works from the location at 7 Wards Island Bridge, New York, New York 10035.

13.     During all times relevant in this Complaint, DEFENDANT PARENTE was a Sewage Treatment Worker, and continues to be, employed by DEFENDANT NYC, and works from the location at 7 Wards Island Bridge, New York, New York 10035.

## FACTUAL ALLEGATIONS

14.     PLAINTIFF was employed by DEFENDANT NYC, for seventeen (17) years.

15.     In or about 2004, PLAINTIFF was hired by DEFENDANT NYC DEP as a Sewage Treatment Worker.

16.     Plaintiff's position for his entire seventeen year career with Defendant was as a Sewage Treatment Worker. Defendant's own published job description for a Sewage Treatment Worker, provides the following:

> **WHAT THE JOB INVOLVES:** Sewage Treatment Workers under general supervision, monitor plant operations and perform all necessary watch duties including maintenance of plant equipment. They operate, maintain and repair machinery, equipment, and structures in wastewater treatment plants, clean water storage and processing facilities, pumping stations, intercepting sewers, sludge treatment and disposal facilities, and related equipment and facilities; operate, maintain, monitor and repair equipment such as regulators, diversion chambers, tide gates, pumps, sludge collecting treatment and disposal equipment, blowers, compressors, motors, air filters, chlorination equipment, centrifuges, heat exchanger equipment, valves, pipes; exchange water heaters; may assist Oilers to replace the motor in boilers; take samples and perform tests relating to sewage composition and clean water quality; participate in the operation and monitoring of chemical bulk storage tanks, such as making periodic inspections and tests as required, reporting tank levels, monitoring leakage warning systems and deployment of spill containment devices; read meters, gauges and charts and record the readings; keep operating logs and other records; serve as confined space entry attendant,

taking and monitoring gas readings, and all other necessary tasks as required by legal regulations; clean and maintain structures, equipment and grounds; load sludge vessels and barges; operate vehicles and radio telephones; perform rigging and hoisting; handle grit, screenings, grease, and sludge; operate burning equipment; operate and maintain power tools; participate in training for Vactor Truck operations; and drive and operate Vactor trucks. All Sewage Treatment Workers perform related work.

**Special Working Conditions:** Sewage Treatment Workers will be required to work shifts including nights, Saturdays, Sundays, and holidays. Some of the physical activities performed by Sewage Treatment Workers and environmental conditions experienced are: climbing and descending ladders and stairways; standing for long periods of time; walking to and from repair sites; bending, crouching and kneeling; erecting and working on scaffolds; lifting and carrying heavy equipment; working in confined areas; working outdoors in all kinds of weather; working in areas that have high noise levels and may be damp, dark, dusty, dirty and/or acrid; operating burning and welding equipment; using a respirator; using equipment for fecal testing; and operating and maintaining color coded equipment.

(https://www.nyc.gov/assets/dcas/downloads/pdf/noes/201909311000.pdf, page 2) (accessed July 10, 2023).

    17.    I the following certifications are required to perform as a Sewage Treatment Worker, which evidence the potential danger involved with said position:

**Certificate Requirements:** Within three months of appointment you must obtain all of the following Certificates of Fitness issued by the NYC Fire Department. These certificates must be maintained for the duration of employment:
1. (C92) Storage and Use of Flammable and/or Combustible Liquids
2. (F60) Fire Guard for Torch Operations and Construction Site
3. (G22) Use of Liquefied Petroleum Gas or Compressed Natural Gas
4. (G44) Storage and Handling of Liquefied Petroleum Gas or Compressed Natural Gas
5. (G46) Storage, Handling, Use and Refilling of Non-Flammable Gas Cylinders
6. (G60) Torch Use of Flammable Gas
7. (G98) Handling, Use and Storage of Flammable Compressed Gases
8. (S94) Handling and Dispensing Flammable or Combustible Liquids

(https://www.nyc.gov/assets/dcas/downloads/pdf/noes/201909311000.pdf, page 3) (accessed July 10, 2023).

18.     At the time PLAINTIFF was hired by DEFENDANT NYC DEP, it was and is a duly constituted municipal entity.

19.     PLAINTIFF worked the night shift at the DEP's sewage treatment facility on Ward Island. Throughout his employment, PLAINTIFF was qualified to perform his job and performed the essential functions of his job in a satisfactory manner.

20.     In or about early 2020, PLAINTIFF TERRENCE REYNOLDS, reported illegal conduct to DEFENDANT MCCOY and DEFENDANT HAMAN, of whom both were acting supervisors, at Ward Island Sewage Treatment Facility. Said illegal conduct consisted of PLAINTIFF'S fellow employees engaging in the following: 1) drug dealing at the worksite, which is public property; 2) intoxication on the job; 3) fraudulent signing of paperwork concerning chemical deliveries; and 4) theft of personal protective equipment.

21.     PLAINTIFF reported aforementioned illegal conduct because it presented a clear potential risk. The reporting of said illegal conduct would not provide PLAINTIFF with any personal benefit.

22.     Immediately following PLAINTIFF's reports to Acting Supervisors, DEFENDANT MCCOY and DEFENDANT HAMAN, PLAINTIFF became the target of his coworker's hostility, brutality, and vengeance. PLAINITFF was especially ridiculed by coworker, DEFENDANT PARENTE.

23.     In addition to this constant antagonism, in or about March 2020, PLAINTIFF'S work schedule was altered to the day shift, resulting in a significant pay reduction. As a result of being

transferred from the night shift, PLAINTIFF's income was significantly reduced. PLAINTIFF no longer had the ability to work overtime hours and subsequently lost the ability to earn overtime pay. A direct result of PLAINIFF's reports to Acting Supervisors, DEFENDANT MCCOY and DEFENDANT HAMAN.

24.    In or about May 2020, PLAINTIFF was physically and sexually assaulted by DEFENDANT PARENTE on DEFENDANT NYC'S worksite. PLAINTIFF was brutally beaten and relentlessly molested by DEFENDANT PARENTE in retaliation for PLAINTIFF reporting DEFENDANT PARENTE'S constant intoxication on the job to Supervisors, DEFENDANT MCCOY, DEFENDANT MARTELL and DEFENDANT HAMAN.

25.    On or about May 28, 2020, PLAINTIFF was taking a shower in the locker room of DEFENDANT NYC'S worksite, after completing his shift for the day, when DEFENDANT PARENTE cornered PLAINTIFF and inhumanely beat and sexually assaulted PLAINTIFF.

26.    PLAINTIFF, forced to cover his face from DEFENDANT PARENTE'S fists, was punched by DEFENDANT PARENTE in his arms, wrists, shoulders, and stomach numerous times.

27.    DEFENDANT PARENTE continued his attack on PLAINTIFF by removing his clothing, lurching his penis in PLAINTIFF'S face, making physical contact with PLAINTIFF, and ordering PLAINTIFF to "suck his dick". PLAINTIFF attempted to escape DEFENDANT PARENTE'S brutal attack but hit his head on the corner of the sink, leaving PLAINTIFF defenseless. PLAINTIFF laid afraid and helpless while DEFENDANT PARENTE'S friend, and co-worker PAT BURNS (herein "BURNS") witnessed the entire physical and sexual assault, cheering on DEFENDANT PARENTE. DEFENDANT PARENTE and BURNS laughed in amusement watching PLAINTIFF lay paralyzed from the physical and sexual assault.

28.    Despite DEFENDANT PARENTE'S vicious physical and sexual assault, PLAINTIFF sought to deescalate the situation by calmly walking away once DEFENDANT PARENTE finished his attack.

29.    DEFENDANT PARENTE'S physical and sexual assault on PLAINTIFF was a direct result of PLAINTIFF'S reporting to Supervisors, DEFENDANT MCCOY, DEFENDANT MARTELL and DEFENDANT HAMAN of DEFENDANT PARENTE'S continuous intoxication while on the job at DEFENDANT NYC'S worksite.

30.    Following the physical and sexual assault, PLAINTIFF, suffered from bruising, swelling, numbness and severe nerve damage. PLAINTIFF was forced to obtain medical treatment for his injuries. PLAINTIFF still suffers from the injuries caused by DEFENDANT PARENTE. PLAINTIFF engages in construction work and due to the attack, PLAINTIFF has limited mobility in his arm which has made construction work next to impossible, drastically reducing PLAINTIFF'S ability to earn an income based on PLAINTIFFS trade and training.

31.    PLAINTIFF was compelled to consult with a psychotherapist after suffering from anxiety, depression, and post-traumatic stress disorder following the sexual assault by DEFENDANT PARENTE. PLAINTIFF has lost countless nights of sleep, deliberating the violent physical and sexual assault by DEFENDANT PARENTE.

32.    Subsequently, PLAINTIFF filed a police report against DEFENDANT PARENTE, and a warrant was issued for DEFENDANT PARENTE'S arrest. PLAINTIFF notified DEFENDANT MARTELL, PLAINTIFF'S Supervisor of same.

33.    Nevertheless, Supervisor DEFENDANT MARTELL arranged for the transfer of DEFENDANT PARENTE to another DEP location known as the Grit Chambers Plant (herein "GCP") in an effort to conceal DEFENDANT PARENTE'S work location from authorities and

frustrate the New York Police Department's (herein "NYPD") ability to effectuate DEFENDANT

PARENTE'S arrest.

34.     The GCP is known by DEFENDANT NYC'S employees as a desirable work site

where old timers are placed due to the slow-paced work environment. Supervisor, DEFENDANT

MARTELL rewarded DEFENDANT PARENTE for physically and sexually assaulting

PLAINTIFF. Supervisor, DEFENDANT MARTELL showed no empathy for PLAINTIFF, nor

did DEFENDANT MARTELL exercise his duties to protect DEFENDANT NYC'S employees as

an Acting Supervisor.

35.     Nevertheless, the work performed at GCP is extremely crucial. The GCP employees

extract garbage out of the gutters and transfers the water into containers to dispose of foldables

diluted and swept away. After these methods are taken, they result in sodium hypochlorite, which

is a highly toxic chemical. Mistreatment of this chemical can result in severe corrosive damage to

the eyes, skin, respiratory and gastrointestinal tissues and can be fatal. This procedure takes two

to three (2-3) men to operate.

36.     Unsurprisingly, the senior employees working at GCP began to complain about

DEFENDANT PARENTE'S constant intoxication while on the job. Once again, DEFENDANT

NYC arranged for the transfer of DEFENDANT PARENTE to another DEP location known as

the Bronx Grit Chambers Plant (herein "BGCP").

37.     DEFENDANT PARENTE is a convicted felon who served six (6) years in the New

York State Penitentiary System for manslaughter in the first degree. DEFENDANTS and their

agents sought to hide and protect DEFENDANT PARENTE, a criminal with a history of violence,

and put PLAINTIFF, who was pursuing criminal prosecution for the assault in danger.

38.     DEFENDANT NYC's worksite has a long history of Supervisors failing to fulfill

their duties and manage employees in accordance with written policies and procedures. For example an employee of DEFENDANT NYC DEP worksite, Reggie Hanks (herein "HANKS") lost four (4) fingers while working on DEFENDANT NYC's worksite due to his Acting Supervisor, Rafino's (first name unknown) (herein "RAFINO), mismanagement and carelessness.

39.    DEFENDANTS have a pattern and practice for covering up DEFENDANT PARENTE's barbaric behavior and constant intoxication.

40.    DEFENDANT PARENTE got into an altercation with Joseph Butler (herein "BUTLER") due to DEFENDANT PARENTE's inebriation. Instead of terminating or suspending DEFENDANT PARENTE, DEFENDANT NYC arranged for the transfer of BUTLER to the Sharon Building. The Sharon Building is known to employ those that DEFENDANT NYC seeks to isolate and force out, due to its undesirable work conditions.

41.    DEFENDANT PARENTE's constant intoxication has been the source for other employees' injuries at DEFENDANT NYC's worksite.

42.    Anthony Sini (herein "SINI") worked with DEFENDANT PARENTE at the DEP and was burnt by a steam engine. SINI's injures were so catastrophic that his skin peeled off of his body. DEFENDANT PARENTE was supposed to be assisting SINI but was unable to because of DEFENDANT PARENTE intoxication on the worksite.

43.    Despite DEFENDANT NYC'S knowledge of the physical and sexual assault by DEFENDANT PARENTE and the issues PLAINTIFF raised regarding the health and safety risks to the community, DEFENDANTS and their agents further retaliated against PLAINTIFF.

44.    The retaliation included, but was not limited to, abuse of process and denial of PLAINTIFFS due process and substantive process rights by subjecting PLAINTIFF to contrived written discipline based on false accusations and by provoking PLAINTIFF to have a verbal

altercation and then documenting same, in an effort to create a paper trail to justify PLAINTIFF'S termination after seventeen (17) years of employment without any prior incidents.

45.    The timing of these retaliatory attacks and sudden negative treatment of PLAINTIFF were directly related to PLAINTIFF'S reporting of illegalities occurring at DEFENDANT NYC DEP's work location and the dangers same posed to the employees at DEFENDANT NYC DEP's worksite.

46.    DEFENDANTS NYC, MCCOY, MARTELL and HAMEN each had knowledge of the physical and sexual assault suffered by PLAINTIFF at the hands of DEFENDANT PARENTE, as well as PLANTIFF'S concerns for the safety issues raised, and retaliated against PLAINTIFF by terminating him after (17) years of employment.

47.    On or about November 12, 2021, DEFENDANT NYC, terminated PLAINTIFF'S employment following a hearing at which numerous witnesses presented false testimony as part of the DEFENDANTS' conspiracy.

48.    Upon information and belief, DEFENDANTS' objective was to muzzle PLAINTIFF by terminating his employment based on PLAINTIFF's reporting of illegalities occurring at DEFENDANT NYC DEP's worksite including the sexual assault by DEFENDANT PARENTE.

49.    In furtherance of their attempt to silence PLAINTIFF from pursuing his claims against DEFENDANT PARENTE, DEFENDANT NYC'S employees falsified their testimonies under oath.

50.    DEFENDANTS retaliated against PLAINTIFF for whistle blowing and subsequently pursing criminal charges against DEFENDANT PARENTE and causing PARENTE to be arrested.

51.     DEFENDANTS and their agents have a long history and pattern of ignoring and silencing whistle blowers.

52.     Ultimately, DEFENDANTS and their agents engaged in a campaign of continual harassment of PLAINTIFF in an effort to provoke a negative reaction from PLAINTIFF for the purpose of creating a pretext to terminate his employment.

53.     Said actions were contrived against PLAINTIFF in retaliation for his reporting of illegal activities and that the sexual assault by DEFENDANT PARENTE occurred at DEFENDANT NYC DEP's worksite.

54.     DEFENDANT NYC and its policymakers participated in the "coverup" of the sexual and physical assault of PLAINTIFF by: 1) transferring DEFENDANT PARENTE to a different location when DEFENDANT NYC learned of DEFENDANT PARENTE's impeding arrest; 2) orchestrating the false charges against PLAINTIFF when PLAINTIFF perused criminal prosecution of DEFENDANT PARENTE for the assault; and 3) effectuating the retaliatory termination of PLAINTIFF.

## AS AND FOR COUNT ONE
## FOURTH AMENDMENT - ABUSE OF PROCESS

55.     PLAINTIFF repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 52 of this Complaint with the same force and effect as though fully set forth herein.

56.     The DEFENDANTS intentionally, recklessly and maliciously filed and/or caused to be filed, a false, inaccurate, and/or misleading witness statements against PLAINITFF to justify a disciplinary hearing and termination of PLAINTIFF in retaliation for PLAINTIFF reporting the physical and sexual assault by DEFENDANT PARENTE and seeking criminal prosecution of DEFENDANT PARENTE for the sexual and physical assault that occurred at DEFENDANT

DEP in the shower room and the reporting of intoxication and illegal activities at the job site.

57.     DEFENDANTS MCCOY, MARTELL and HAMAN, along with other DEFENDANT DEP Supervisors coordinated the false testimony and fabricated discipline against PLAINTIFF that was presented at PLAINTIFF's disciplinary hearing.

58.     Said false and fabricated testimony included but was not limited to, an employee providing false testimony at PLAINTIFF's disciplinary hearing that said employee heard PLAINTIFF threaten that he had a 9 millimeter gun in his car. PLAINTIFF vehemently denies this allegation and has never owned or claimed he owned or been in possession of any form of firearm.

59.     Furthermore, DEFENDANTS never called the police, checked PLAINTIFF's vehicle or took any action whatsoever when PLAINTIFF allegedly made this announcement regarding a 9 millimeter gun. This level of inaction by DEFENDANTS in regards to an incident said DEFENDANTs now view as a serious offense, lends to the incident being a fabrication.

60.     Other examples of disciplinary incidents included but are not limited to PLAINTIFF allegedly cursing five times; notable curing at the sewage treatment plant is prolific and if every employee that uttered a curse word was disciplined, there would be no employees or supervisors at DEFENDANT NYC DEP.

61.     PLAINTIFF also allegedly slammed a door, stared at his supervisor and was late, which was common at DEFENDANT NYC's DEP as testified to by one supervisor. The most notable factor being that PLAINTIFF never received any discipline during his seventeen-year career with DEFENDANT until he voiced his complaints regarding DEFENDANT PARANTE and the illicit activities at DEFENDANT NYC's DEF Ward Island location.

62.     Defendant and DEP has a pattern of retaliation against employees who raise issues

in the capacity of whistle blowing from fabrication of evidence and false testimony to present at disciplinary hearings to rewarding employees for false testimony against whistleblowers. *See McGuire v. City of New York*, 2015 WL 8489962, at *2 (E.D.N.Y., 2015)(retaliation included: transfer; lost overtime; less desirable assignments; lose weekend shifts; denied vacation requests;; and was subjected to verbal abuse); *Valdes v. New York City Dept. of Environmental Protection*, 1997 WL 666279, at *4 (S.D.N.Y.,1997)(Plaintiff's job threatened several times by supervisor when Plaintiff informed Supervisor he was filing an EEOC complaint); *Moriates v. City of New York*, 2016 WL 3566656, at *5 (E.D.N.Y., 2016)( Employee charged with violating hazardous materials regulations based on perjured testimony of colleagues) *Berlyavsky v. New York City Department of Environmental Protection*, 2016 WL 1383486, at *2 (E.D.N.Y., 2016)(Plaintiff alleged "continuous and growing practice of discrimination ... that encourages and compensates DEP managers with overtime to retaliate against subordinate employee-whistleblowers who report violations of environmental health and safety laws"); *see also Nwanji v. New York City Dept. of Environmental Protection*, 1999 WL 395412, at *2 (S.D.N.Y.,1999); *Shargani v. New York City Department of Environmental Protection*, 2022 WL 1046764, at *1 (S.D.N.Y., 2022); *Semorile v. City of New York*, 2007 WL 4292027, at *1.

63.    DEFENDANTS issued false disciplinary write ups, wrongfully initiated a disciplinary hearing, elicited false testimony from DEFENDANT's employees with the objective of wrongfully terminating PLAINTIFF in retaliation for reporting illicit activity and pursing the prosecution of DEFENDANT PARENTE for the sexual and physical assault.

**AS AND FOR COUNT TWO**
**FIFTH AMENDMENT PROCEDURAL AND SUBSTATIVE DUE PROCESS**
**CLAIMS –FOURTEENTH AMENDMENT GENDER DISCRIMINATION**

64.    PLAINTIFF repeats, reiterates, and realleges each and every allegation contained

in paragraphs 1 through 61 of this Complaint with the same force and effect as though fully set forth herein.

65.    "[N]o person shall be …. deprived of life, liberty, or property, without due process of law." *U.S.C. Const. Amend V.*

66.    "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S.C. Const. Amend. XIV.

67.    PLAINTIFF has a protected property interest in his employment as a New York City Government employee protected under a collective bargaining agreement with DEFENDANT NYC.

68.    PLAINTIFF was deprived of his property interest in his employment when he was wrongfully terminated based on DEFENDANTS fabrication of false evidence to use as an excuse to terminate PLAINTIFF, in retaliation for PLAINTIFF reporting DEFENDANT PARENTE, a known violent felony, to the New York City Police for DEFENDANT PARENTE's physical and sexual assault of PLAINTIFF in the showers on DEFENDANTS NYC's property, discussed in depth in the Factual Background and Count I sections *Supra.*

69.    Furthermore, said retaliatory termination was also based on PLAINTIFF pursuing an arrest and criminal prosecution against DEFENDANT PARENTE for said sexual and physical assault on DEFENDANT NYC's property.

70.    Rather then investigate PLAINTIFF's serious Complaint of sexual and physical

15

assault, DEFENDANTS chose to persecute PLAINTIFF and protect the perpetrator, DEFENDANT PARENTE.

71.    PLAINTIFF, who is male, was subjected to extreme sexual harassment by DEFENDANT PARENTE who is also male.

72.    Specifically, PLAINTIFF was physically attacked in the shower room while unclothed, DEFENDANT PARANTE thrust his naked penis in PLAINTIFF's face and instructed PLAINTIFF to "suck my dick."

73.    PLAINTIFF fell backward during the assault and struck his head on a sink rendering PLAINTIFF incapacitated as the assault continued.  PLAINTIFF suffered continuing physical and emotional injuries from said assault.

74.    If PLAINTIFF were female and DEFENDANT PARENTE physically and sexually assaulted PLAINTIFF in the same manner, DEFENDANTS would have disciplined and more likely then not terminated DEFENDANT PARENTE's employment.

75.    Based on the fact that PLAINTIFF is male, rather than subjecting DEFENDANT PARENTE to discipline, DEFENDANTS persecuted PLAINTIFF and protected  DEFENDANT PARENTE, as described *supra*, in the Factual Background and directly *infra*.

76.    DEFENDANT NYC's Supervisors at NYC DEP, including DEFENDANTS MCCOY, MARTELL and HAMAN incredulously moved DEFENDANT PARENTE's work location when said Supervisors were advised that the NYPD was seeking to arrest DEFENDANT PARENTE in order to frustrate the NYPD's efforts to effectuate an arrest.

77.    DEFENDANTS then solicited false statements from DEFENDANT NYC DEP employees against PLAINTIFF because P LAINTIFF had DEFENDANT PARENTE arrested and commenced a criminal prosecution against said DEFENDANT.

78.     The fact that DEFENDANTS submitted knowingly submitted false evidence at the disciplinary hearing denied PLAINTIFF  due process, as PLAINTIFF was subjected to nothing more than a kangaroo court.

79.     There is a pattern and practice of DEFENDANTS' fabricating false evidence and soliciting false statements from employees by their superiors at DEFENDANT NYC's DEP to wrongfully terminate employees and/or cover up wrongdoing at DEFENDANT NYC's  DEP at the Ward Island location. (*see ¶ 62 Supra*).

80.     DEFENDANT NYC's DEP and it's supervisor had no justification for using the disciplinary hearing to terminate PLAINTIFF  from his employment, as the infractions used as the basis to terminate were a fiction created by DEFENDANTS.

81.     Furthermore, PLAINTIFF was sexually assaulted by DEFENDANT PARENTE in front of PLAINTIFF'S colleagues, who took no action to intervene or report said sexual assault, presumably based on PLAINTIFF's gender, as male, for fear of reprisals by DEFENDANT PARENTE who was known to be intoxicated and violent at work.

82.     Prior to PLAINTIFF  making complaints regarding DEFENDANT PARENTE's intoxication at work, which precipitated the sexual and physical assault, and PLAINTIFF's involvement of the NYPD and the criminal prosecution of DEFENDANT  PARENTE, PLAINTIFF had an unblemished work history for seventeen years with DEFENDANT NYC.

83.     DEFEDNANT NYC requires a criminal background check prior to employment at NYC DEP.  As such, prior to DEFENDANT PARENTE's employment with DEFENDANT, DEFENDANT was aware of said DEFENDANT'S  approximately seven (7) year incarceration for manslaughter and therefore his propensity for violence.

### AS AND FOR COUNT THREE
### FOURTH AMENDMENT –
### FAILURE TO INTERVENE/FAILURE TO SUPERVISE

84.    PLAINTIFF repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 81 of this Complaint with the same force and effect as though fully set forth herein.

85.    DEFENDANTS   refused to intervene and stop DEFENDANTS MCCOY, MARTELL and HAMAN from submitting and soliciting falsified statements; failure to perform and /or initiate  an investigation into the herein allegations made by PLAINITFF  and acting in consort with DEFENDANT PARENTE to delay/prevent/frustrate his arrest by the NYPD for his sexual and physical assault on PLAINTIFF.

86.    Furthermore, DEFENDANTS   failed to stop DEFENDANTS MCCOY, MARTELL, HAMAN and other supervisors/employees from  providing false testimony, based on false statements created to subject PLAINTIFF to unfounded discipline including termination. (*see* Factual Background and Count I *supra*).

87.    DEFENDANTS were aware of DEFENDANT PARENTE's predilection for violence and intoxication at the workplace and his prior conviction for manslaughter, yet protected and relocated DEFENDANT PARENTE whenever said DEFENDANT caused issues at the workplace rather than subjecting DEFENDANT PARENTE to discipline.

88.    DEFENDANTs MCCOY, MARTELL and HAMAN failed to follow the chain of command and report PLAINTIFF's allegations regarding the sexual and physical assault to their superiors, the NYPD, Human Resource or the Equal Employment Office at DEFENDANT NYC.

89.    PLAINTIFF filed a police report against DEFENDANT PARENTE, and a warrant was issued for DEFENDANT PARENTE'S arrest. PLAINTIFF notified DEFENDANT

MARTELL, PLAINTIFF'S supervisor.

90.     Nevertheless, Supervisor DEFENDANT MARTELL arranged for the transfer of DEFENDANT PARENTE to another DEP location known as the Grit Chambers Plant (herein "GCP") in an effort to conceal DEFENDANT PARENTE'S work location from authorities and frustrate the New York Police Department's (herein "NYPD") ability to effectuate DEFENDANT PARENTE'S arrest.

91.     The GCP is known by DEFENDANT NYC'S employees as a desirable work site where old timers are placed due to the slow-paced work environment. Supervisor, DEFENDANT MARTELL rewarded DEFENDANT PARENTE for physically and sexually assaulting PLAINTIFF. Supervisor, DEFENDANT MARTELL showed no empathy for PLAINTIFF, nor did DEFENDANT MARTELL exercise his duties to protect DEFENDANT NYC'S employees as an Acting Supervisor.

92.     Nevertheless, the work performed at GCP is extremely crucial. The GCP employees extract garbage out of the gutters and transfers the water into containers to dispose of foldables diluted and swept away. After these methods are taken, they result in sodium hypochlorite, which is a highly toxic chemical. Mistreatment of this chemical can result in severe corrosive damage to the eyes, skin, respiratory and gastrointestinal tissues and can be fatal. This procedure takes two to three (2-3) men to operate.

93.     Unsurprisingly, the senior employees working at GCP began to complain about DEFENDANT PARENTE'S constant intoxication while on the job. Once again, DEFENDANT NYC arranged for the transfer of DEFENDANT PARENTE to another DEP location known as the Bronx Grit Chambers Plant.

94.    Said failure to intervene resulted in DEFENDANT PARENTE to continue to be intoxicated on the job, bully other employees and put other employees and the environment at risk. (*See* ¶¶ 37-43 *supra* for examples of specific instances).

## AS AND FOR COUNT FOUR
## BATTERY PURSUANT TO THE ADULT SURVIVORS ACT

95.    The PLAINTIFF repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 92 of this Complaint with the same force and effect as though fully set forth herein.

96.    DEFENDANT PARENTE committed battery against PLAINTIFF when DEFENDANT PARENTE physically beat and sexually assaulted PLAINTIFF in DEFENDANT NYC's DEP Ward Island shower room.

97.    Specifically, on or about May 28, 2020, PLAINTIFF was taking a shower in the locker room of DEFENDANT NYC'S worksite, after completing his shift for the day, when DEFENDANT PARENTE cornered PLAINTIFF and inhumanely beat and sexually assaulted PLAINTIFF.

98.    PLAINTIFF, forced to cover his face from DEFENDANT PARENTE'S fists, was punched by DEFENDANT PARENTE in his arms, wrists, shoulders, and stomach numerous times.

99.    DEFENDANT PARENTE continued his attack on PLAINTIFF by removing his clothing, lurching his penis in PLAINTIFF'S face, making physical contact with PLAINTIFF, and ordering PLAINTIFF to "suck his dick". PLAINTIFF attempted to escape DEFENDANT PARENTE'S brutal attack, but hit his head on the corner of the sink, leaving PLAINTIFF defenseless. PLAINTIFF laid afraid and helpless while DEFENDANT PARENTE'S friend, and co-worker PAT BURNS (herein "BURNS") witnessed the entire physical and sexual assault,

cheering on DEFENDANT PARENTE. DEFENDANT PARENTE and BURNS laughed in amusement watching PLAINTIFF lay paralyzed from the physical and sexual assault.

100.   Despite DEFENDANT PARENTE'S vicious physical and sexual assault, PLAINTIFF sought to deescalate the situation by calmly walking away once DEFENDANT PARENTE finished his attack.

101.   DEFENDANT PARENTE intentionally and without PLAINTIFF's consent, inserted his penis in PLAINITFF's face and beat PLAINITFF, while PLAINTIFF was naked in the shower to torture, humiliate and degrade PLAINTIFF in front of PLAINTIFF's colleague BURNS and to satisfy DEFEDANT PARENTE's own sexual desires.

102.   DEFENDANT PARENTE'S physical and sexual assault on PLAINTIFF was a direct result of PLAINTIFF'S reporting to Acting Supervisors, DEFENDANTS MCCOY, MARTELL and DEFENDANT HAMAN, of DEFENDANT PARENTE'S continuous intoxication while on the job at DEFENDANT NYC'S worksite.

103.   DEFENDANT PARENTE's conduct was the direct and proximate cause of PLAINTIFF's past and future substantial damages, including significant pain and suffering, lasting psychological and pecuniary harms, loss of dignity, invasion of privacy and loss of income.

104.   Following the physical and sexual assault, PLAINTIFF, suffered from bruising, swelling, numbness and severe nerve damage. PLAINTIFF was forced to obtain medical treatment for his injures. PLAINTIFF still suffers from the injuries caused by DEFENDANT PARENTE. PLAINTIFF engages in construction work and due to the attack, PLAINTIFF has limited mobility in his arm which has made construction work next to impossible, drastically reducing PLAINTIFF'S ability to earn an income based on PLAINTIFFS trade and training.

105.   PLAINTIFF was compelled to consult with a psychotherapist after suffering from

anxiety, depression, and post-traumatic stress disorder following the sexual assault by DEFENDANT PARENTE. PLAINTIFF has lost countless nights of sleep, deliberating the violent physical and sexual assault by DEFENDANT PARENTE.

106.    Subsequently, PLAINTIFF filed a police report against DEFENDANT PARENTE, and a warrant was issued for DEFENDANT PARENTE'S arrest. PLAINTIFF notified DEFENDANT MARTELL, PLAINTIFF'S Supervisor of same.

107.    PLAINTIFF informed the NYPD of the physical attack but not the sexual attack due to PLAINTIFF's embarrassment with having been a victim of sexual assault by a male.

108.    Nevertheless, Supervisor DEFENDANT MARTELL arranged for the transfer of DEFENDANT PARENTE to another DEP location known as the Grit Chambers Plant (herein "GCP") in an effort to conceal DEFENDANT PARENTE'S work location from authorities and frustrate the New York Police Department's (herein "NYPD") ability to effectuate DEFENDANT PARENTE'S arrest.

109.    The GCP is known by DEFENDANT NYC'S employees as a desirable work site where old timers are placed due to the slow-paced work environment. Supervisor, DEFENDANT MARTELL rewarded DEFENDANT PARENTE for physically and sexually assaulting PLAINTIFF. Supervisor, DEFENDANT MARTELL showed no empathy for PLAINTIFF, nor did DEFENDANT MARTELL exercise his duties to protect DEFENDANT NYC'S employees as an Acting Supervisor.

110.    DEFENDANT PARENTE's sexual assault upon PLAINTIFF constitute sexual offenses as defined in Article 130 of the New York Penal Law including but not limited to: 1) sexual misconduct); (§130.20); 2) criminal sexual act in the third degree (§ 130.40); 3) criminal sexual act in the first degree (§ 130.50); 4) forcible touching (§ 130.52); 5) sexual abuse in the

third degree (§130.55); and 6) sexual abuse in the first degree (§130.65).

111.    PLAINTIFF's claim for battery is thus timely under the Adult Survivors Act, New York C.P.L.R. § 214-j.

112.    WHEREFORE, PLAINTIFF demands judgment against Defendant, where applicable, for all compensatory, emotional, physical, and punitive damages (against individual defendants, where applicable), lost pay, front pay, injunctive relief, attorney fees and costs, and **any other damages** permitted by law. PLAINTIFF demands a trial by jury.

Dated: Woodbury, New York
          November 4, 2023

                    LAW OFFICES OF GEOFFREY T. MOTT

                    Cathryn Harris-Marchesi, Esq.
                    *Attorney for Plaintiff*
                    7600 Jericho Turnpike, Suite 105
                    Woodbury, New York 11797
                    Tel: (516) 544-4600
                    Fax: (516) 544-4601