# EXHIBIT C

**MANDATE**

23-76-cv
*Reynolds v. City of New York*

1:22-cv-01910-VEC

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Apr 01 2024

## UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11th day of March, two thousand twenty-four.

Present:

> JON O. NEWMAN,
> EUNICE C. LEE,
> ALISON J. NATHAN,
> > *Circuit Judges.*

---

TERRENCE REYNOLDS,

> *Plaintiff-Appellant*,

v.                                                                                              23-76-cv

CITY OF NEW YORK,

> *Defendant-Appellee.*

---

For Plaintiff-Appellant:          GEOFFREY T. MOTT, Law Offices of Geoffrey T. Mott, P.C., Woodbury, NY.

For Defendant-Appellee:        JAMISON DAVIES (Richard Dearing, Kevin Osowski, *on the brief*), Assistant Corporation Counsel, *for*

**MANDATE ISSUED ON 04/01/2024**

Case 22-cv-06900-VEC Document 28 Filed 04/01/24 Page 2 of 8

Hon. Sylvia O. Hinds-Radix,
Corporation Counsel of the
City of New York, New
York, NY.

Appeal from a December 20, 2022 judgment of the United States District Court for the Southern District of New York (Caproni, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Terrence Reynolds ("Reynolds") initiated the underlying action pursuant to 42 U.S.C. § 1983, alleging a violation of his First Amendment rights by his former employer, Defendant-Appellee the City of New York ("the City"). Reynolds alleges that the City fired him from the City's Department of Environmental Protection ("DEP") in retaliation for reporting coworker misconduct and illegal activity at the DEP. The district court granted the City's motion to dismiss. *See Reynolds v. City of New York*, No. 22-CV-1910 (VEC), 2022 WL 17792394, at *4 (S.D.N.Y. Dec. 19, 2022).

We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal, to which we refer only as necessary to explain our decision to affirm.

\*            \*            \*

In 2004, Reynolds began working at the DEP as a sewage treatment worker. In early 2020, Reynolds alerted his supervisors to apparent workplace misconduct and illegal activity. Reynolds's Amended Complaint references a few instances of such misconduct including that "many of the employees . . . would consume alcohol and attend work while in a state of intoxication, thereby impeding their ability to adequately perform their job, which is an essential function to maintain public health." App'x at 37; *see also id.* at 38 (alleging that he reported

"drug dealing, fraudulent signing of paperwork concerning chemical deliveries, and theft of PPE supplies" at the DEP).

Reynolds claims that as a result of his reports to supervisors, he became "the victim of a concerted retaliatory attack by supervisors and coworkers who were aware that he had blown the whistle." App'x at 38. The alleged retaliation included being transferred to the day shift after he had worked the night shift for seventeen years, which caused a significant reduction in his available overtime hours. He contends that he was also subjected to workplace hostility, threats, and false accusations of wrongdoing. Reynolds alleges that in one particular incident, he was assaulted by a coworker in retaliation for his reports and required medical treatment for his injuries.

Reynolds further claims that various false accusations were leveled against him, including that he was late to work and that he threatened and insulted coworkers using profane language on various occasions. By 2021, Reynolds had been charged with over a dozen acts of workplace misconduct. Reynolds claims that these accusations were a "contrived" basis for terminating him. Appellant's Br. at 7. In the summer of 2021, the City commenced an Office of Administrative Trials and Hearings ("OATH") hearing regarding these disciplinary charges. At the close of the OATH hearing, the Administrative Law Judge issued a report recommending termination of Reynolds's employment because of his "uncivil, insubordinate, and threatening behavior." App'x at 74. The DEP Commissioner adopted the recommendation and ordered Reynolds to be terminated in November 2021, and Reynolds commenced the underlying civil action in March 2022.

On December 19, 2022, the district court dismissed Reynolds's Amended Complaint,

3

finding that Reynolds "fail[ed] to allege adequately that he spoke as a citizen on a matter of public concern as opposed to speaking as an employee about improper workplace conduct." *Reynolds*, 2022 WL 17792394, at *4. We agree.

\*  \*  \*

"We review a district court's grant of a motion to dismiss *de novo*, 'accepting as true all factual claims in the complaint and drawing all reasonable inferences in the plaintiff's favor.'" *Henry v. County of Nassau*, 6 F.4th 324, 328 (2d Cir. 2021) (quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 740–41 (2d Cir. 2013)). To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim is plausibly alleged 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matzell v. Annucci*, 64 F.4th 425, 433 (2d Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

To state a First Amendment retaliation claim, a plaintiff must plausibly plead that: "(1) his speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech." *Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015) (quoting *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 272 (2d Cir. 2011)). To determine whether a public employee's speech is protected, courts must decide "whether the employee spoke as a citizen on a matter of public concern." *Id.* (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)). This inquiry, in turn, involves two distinct sub-questions: first, whether the speech's

4

subject was a matter of public concern, and second, whether the employee was speaking in his or her capacity as a citizen. *Id.* If either question is answered in the negative, "that is the end of the matter." *Id.*

We conclude that Reynolds's reports of coworker misconduct were not about a matter of public concern. Reynolds's primary argument is that reports about misconduct at the DEP must necessarily be connected to the "health and safety of the public via the she[e]r nature of the work at the [DEP], namely ensuring clean drinking water for the public." Appellant's Br. at 4; *see also* Appellant's Reply Br. at 9. However, to establish a First Amendment claim, Reynolds must do more than allege that the "sheer nature" of his and his colleagues' work was connected to the public's safety, and thus a matter of public concern. *See Shara v. Maine-Endwell Cent. Sch. Dist.*, 46 F.4th 77, 81 (2d Cir. 2022) (finding that although a school bus driver's complaints about bus-inspection reporting implicated the safety of bus-riding children, it was not a matter of public concern because "he never alleged . . . that the School District's preferred reporting policy resulted in unsafe conditions or that his proposal of daily reporting would have improved safety"). Indeed, "speech does not involve a matter of public concern when it 'principally focuses on' the speaker's personal issues . . . even if it also incidentally 'touch[es] on a matter of general importance.'" *Shara*, 46 F.4th at 85 (2d Cir. 2022) (alteration in original) (quoting *Montero v. City of Yonkers*, 890 F.3d 386, 399–400 (2d Cir. 2018)).

Here, Reynolds's allegations cursorily mention a few examples of misconduct, including intoxication and drug dealing at the workplace, but he does not actually allege that the misconduct contributed to unsafe drinking water or that it impacted public health and safety. Reynolds argues

5

that at this stage the Court must make all reasonable inferences in favor of him, asserting that the "possibilities" of how intoxicated employees at a sewage treatment facility could endanger the public are as myriad as "there are episodes of the Simpsons." Appellant's Br. at 23; *see id.* (offering hypothetical examples including that "toxic chemicals could spill into the drinking water or be incorrectly stored and leach into the ground as a result of worker intoxication").

While we agree that intoxicated employees at a sewage treatment facility certainly *could* take actions to harm the public's safety, the sparse allegations in Reynolds's Amended Complaint do not allege any facts allowing the Court to draw the inferences Reynolds suggests. Indeed, the Amended Complaint contains only a single sentence concerning the intoxicated employees, which states: "[M]any of the employees . . . would consume alcohol and attend work while in a state of intoxication, thereby impeding their ability to adequately perform their job, which is an essential function to maintain public health." App'x at 6. Contrary to Reynolds's argument, the conclusory assertion that the intoxicated employees' jobs were essential to maintaining public health does not allow the Court to make a reasonable inference—or any inference—about how the employees' intoxication endangered public health or were the subject of matters of public concern. For these same reasons, Reynolds has not alleged sufficient facts for us to conclude that his reports concerning fraudulent signing of paperwork, drug dealing, PPE theft, and other misconduct implicated matters of public concern.

We further conclude that Reynolds's grievances were not made in his capacity as a citizen. "[W]e ask two questions to determine whether a public employee speaks as a citizen: (A) did the speech fall outside of the employee's 'official responsibilities,' and (B) does a civilian analogue

6

exist?" *Matthews*, 779 F.3d at 173. While the presence of a civilian analogue is not a prerequisite to finding that an employee spoke as a citizen, it "may be of some help" to the inquiry. *Montero*, 890 F.3d at 397–98.

First, to determine whether a public employee is speaking pursuant to his official duties, we must examine "the nature of the plaintiff's job responsibilities, the nature of the speech, and the relationship between the two." *Matthews*, 779 F.3d at 173 (quoting *Ross v. Breslin*, 693 F.3d 300, 306 (2d Cir. 2012)). Here, Reynolds's Amended Complaint is devoid of any assertions articulating the nature of his job responsibilities and how his complaints fell outside of those duties. Second, we conclude that Reynolds has not sufficiently alleged the existence of a comparable civilian analogue for his speech. Neither of the bodies Reynolds submitted his complaints to— his supervisors and "the City EEO office,"[1] App'x at 38—are responsible for receiving complaints from the general public. *See Matthews*, 779 F.3d at 175 (explaining that speech directed to an independent state agency which addresses complaints from all citizens—including those who are not public employees—evidences a comparable civilian analogue for a public employee's speech). Instead, his complaints were to individuals or entities tasked with reviewing employment-related

---

[1] We presume Reynolds is referring to submitting a complaint pursuant to New York City's Equal Employment Opportunity Policy, which protects New York City employees and employment applicants from workplace discrimination. *See* City of New York Department of Citywide Administrative Services, *EEO Policy Handbook*, 5 (2023), https://www.nyc.gov/assets/dcas/downloads/pdf/agencies/eeo_policy_handbook.pdf.

7

concerns.[2]

Thus, because Reynolds failed to adequately allege either that his reports about individual employees' misconduct were made in his capacity as a citizen or that his complaints pertained to a matter of public concern—both of which are required to pursue his First Amendment claim—we conclude that he failed to allege a plausible retaliation claim.[3]

            \*            \*            \*

For the reasons set forth above, we conclude that Reynolds's claims were properly dismissed. Accordingly, we **AFFIRM** the district court's judgment.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court



---

[2] While Reynolds also alleges that he spoke as a citizen because he informed the New York Police Department (NYPD) of his physical assault, the argument is waived because it was never raised before the district court. *See In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 133 (2d Cir. 2008). In any event, it lacks merit because Reynolds does not allege that he informed the NYPD of any of the illegalities that serve as the basis of his retaliation claim.

[3] Moreover, we reject Reynolds's suggestion that the district court should have granted him leave to amend. Even if Reynolds could show that he submitted complaints to the Occupational Safety and Health Administration, Reynolds does not allege that the City retaliated against him in response to those complaints.

8

**A True Copy**
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit